DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal of an order of the Lucas County Court of Common Pleas denying the application of appellant for DNA testing pursuant to R.C. 2953.73. The trial court found that the parent sample for DNA testing no longer existed.
 {¶ 2} In December 1977, appellant was convicted by a jury of aggravated murder and sentenced to a life term of imprisonment. This court affirmed the conviction in 1979. The facts underlying appellant's convictions are fully set forth in State v.Ustaszewski (Feb. 9, 1979), 6th Dist. No. L-77-299.
 {¶ 3} R.C. 2953.71 through 2953.8 were enacted in 2003, providing a procedure whereby DNA evidence which had not, or could not have been tested in the original trial could be used in a postconviction proceeding. The legislature specified forms, criteria and mechanisms for the inmate applicant, prosecutor and the trial court.
 {¶ 4} Here, appellant submitted an application, the state filed its response and with it an affidavit of the investigator employed by the Lucas County Prosecutor, who described the procedure he used to look for possible DNA evidence and the results. The state asserted that no evidence was found, and the trial court denied the application pursuant to R.C.2953.74(C)(1), setting forth its reasons as required and stating that "Pursuant to the affidavit of Investigator Thomas Ross of the Lucas County Prosecutor's Office and his attempt to locate all evidence still existing in this case through the Toledo Police Department property room, Lucas County Common Pleas Court Deputies Office, and Medical College of Ohio, the Court finds that the parent sample for DNA testing no longer exists."
 {¶ 5} The appellant sets forth as his single assignment of error:
 {¶ 6} "The lower court erred when it held that the State used `reasonable diligence' in searching for biological evidence pertinent to Mr. Ustaszewski's case, when the State failed to search in two of the most likely places where that evidence would be located: the Ohio Bureau of Criminal Identification and Investigation, and the files of Mr. Ustaszewski's co-defendant."
 {¶ 7} Appellant argues that the trial court wrongly held that the state used reasonable diligence in searching for biological evidence, specifically that the state's failure to look in BCI records and the files of appellant's co-defendant, two obvious locations, demonstrate lack of reasonable diligence.
 {¶ 8} The state argues that appellant would have us interpret "reasonable diligence" to include an exhaustive search. The state further argues that we are unable to review much of appellant's arguments because no transcripts have been made part of the record in this case and thus there is nothing in the record which would substantiate the need to search BCI records. However, the state then asks us to take judicial notice of the manner physical evidence is maintained by the Toledo Police Department and the testing procedures of Medical College of Ohio.
 {¶ 9} The use of DNA evidence to either solve old crimes or to obtain reversals of old convictions, as well as to prosecute and defend current cases is now part of our criminal justice scheme. In R.C. 2953.71 et seq., the legislature has set out specific procedures and criteria to use when an inmate wishes to use DNA to establish his previous unjust conviction. This is a case of first impression for us and we have found no Ohio cases on the issues presented to us in this appeal. Therefore, we will first examine de novo the procedure utilized here to see if the requirements of the statutes were met as it pertains to the assignment of error. See State v. Rossiter, 9th Dist. No. 03CA0078, 2004-Ohio-4727.
 {¶ 10} It is uncontested that appellant's application was properly before the trial court.[1] R.C. 2953.73(D) directs the trial court to accept or reject the application in an expeditious manner "in accordance with the criteria and procedures set forth in sections 2953.74 to 2953.81 of the Revised Code." The trial court then, pursuant to R.C. 2953.75(A), "shall require the prosecuting attorney to use reasonablediligence to determine whether biological material was collected from the crime scene or victim of the offense * * * and whether the parent sample of that biological material still exists at that point in time. * * *" (Emphasis added.)
 {¶ 11} Referring to the prosecutor's duty, the same code section states: "In using reasonable diligence * * * the prosecuting attorney shall rely upon all relevant sources, including, but not limited to, all of the following:
 {¶ 12} "(1) All prosecuting authorities in the case in which the inmate was convicted of the offense for which the inmate is an eligible inmate and is requesting the DNA testing and in the appeals of, and postconviction proceedings related to, that case;
 {¶ 13} "(2) All law enforcement authorities involved in the investigation of the offense for which the inmate is an eligible offender and is requesting the DNA testing;
 {¶ 14} "(3) All custodial agencies involved at any time with the biological material in question;
 {¶ 15} "(4) The custodian of all custodial agencies described in division (A)(3) of this section;
 {¶ 16} "(5) All crime laboratories involved at any time with the biological material in question;
 {¶ 17} "(6) All other reasonable sources." (Emphasis added.)
 {¶ 18} The prosecutor's report is then to be filed with the court and a copy given to the inmate. The court then makes a determination, pursuant to R.C. 2953.73(D), whether to accept or reject the application. No evidentiary hearing is required. The court is then directed to enter a judgment, including its reasons for its acceptance or rejection.
 {¶ 19} Appellee argues that information to be gleaned from the record of the original trial is not available for review because neither transcripts nor records from prior proceedings were filed. That argument is without merit. It is clear that the trial court is required to consider the entire record which should then be before the trial court and, thus, in the record which we review. See App.R. 9. R.C. 2953.73(D) states that the court "in making the determination, shall consider the application, the supporting affidavits, and the documentary evidence and, in addition to those materials, shall consider all the files and records pertaining to the proceedings against the applicant, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript and all responses to the application filed under division (C) of this section by a prosecuting attorney or the attorney general, * * *." (Emphasis added.)
 {¶ 20} The burden is on the state; the prosecuting attorney is required to use reasonable diligence relying on all relevant sources to determine if the biological materials still exists.
 {¶ 21} The legislature gives us a definition of "reasonable diligence" in R.C. 2953.71(Q). Reasonable diligence is defined as "a degree of diligence that is comparable to the diligence a reasonable person would employ in searching for information regarding an important matter in the person's own life." Merriam-Webster's Collegiate Dictionary (10 Ed. 1993) 325 defines diligence as "persevering application."
 {¶ 22} In his application, appellant suggests obtaining DNA from his clothing, material found under the victim's fingernails and appellant's knives. Further, in a memorandum in support of his application, applicant suggests search of the "County Clerk of Court's Office, the Coroner's Office, the Police Property room and/or the District Attorney's Office and the hospital where the victim may have been treated." The state argues that appellant suggests locations unsupported by the record or any authority, and therefore, we cannot consider them. However, as we have stated, the statute makes it mandatory that the trial judge examine all records and then, if properly before this court, we may be able to determine if these locations are relevant sources.
 {¶ 23} The affidavit of the prosecutor's investigator stated three places where he looked for the biological material. In the response filed by the prosecuting attorney to the application, the prosecutor posits that if "any such samples existed, they would be either in the Toledo Police Department Property Room, in the evidence safe of the Lucas County Courthouse that is under the control of Court Security, or, in this case, the Medical College of Ohio which conducted all the forensic testing of the evidence." The response then disposes of the request by referring to the investigator's affidavit that stated the results of the search of those three places. Speculation alone is insufficient. Guessing is not diligence. What may be the usual procedure is a good guess, but it is only a starting point. Without more, a court may be left to speculate, or guess, for example, why a co-defendant's records were not examined. Guessing is not the court's function either. Human error and failure to properly follow procedures occur and must be taken into account. The state should examine the records the judge is required to consider. Further diligence may require, for example, retracing the chain of custody from the place of the offense to final destruction of evidence or retracing places where the victim or his remains may have been. This is especially true of older cases where DNA testing was not available and the significance of certain possible sources of biological material was not appreciated. What constitutes reasonable diligence will depend on particular circumstances. If the prosecutor did a thorough search, we have no supporting materials to substantiate this other than the affidavit of the investigator as to those three places. It is not known if the prosecuting attorney had or utilized a protocol for the search for DNA evidence for purposes under this statutory scheme (or for any other purpose, such as "cold case" file investigations).
 {¶ 24} The legislature has enacted a procedure available to inmates for only a limited period of time. R.C. 2953.71 et. seq., enacted in 2003, and effective October 29, 2003, mandates that the application under this section had to be submitted no later than two years after the effective date. R.C. 2953.73. Our scheme of justice is not perfect, but when scientific advancements are available to give us the tools to correct any unfair, unjust and incorrect results, it is incumbent on all parties to act in good faith and to comply strictly with the statutory scheme set out for that purpose. This is critical to ensure confidence in our system of justice.
 {¶ 25} We find the prosecuting attorney's response insufficient to demonstrate that the prosecutor used reasonable diligence in relying on all relevant sources and therefore insufficient for the trial court to determine if the reasonable diligence standard was met.
 {¶ 26} We find that the trial court's entry, referencing only the insufficient response of the prosecutor is also insufficient for proper review. Accordingly, appellant's assignment of error is found well-taken.
 {¶ 27} The judgment of the Lucas County Court of Common Pleas is reversed and we therefore remand this case to the trial court to make findings that comport with the thoroughness mandated by this statutory scheme. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Singer, P.J., concur.
[1] R.C. 2953.72 provides that:
"(A) Any eligible inmate who wishes to request DNA testing under sections 2953.71 to 2953.81 of the Revised Code shall submit an application for the testing to the court of common pleas specified in section 2953.73 of the Revised Code, on a form prescribed by the attorney general for this purpose. The eligible inmate shall submit the application within the period of time, and in accordance with the procedures, set forth in section2953.73 of the Revised Code. The eligible inmate shall specify on the application the offense or offenses for which the inmate is an eligible inmate and is requesting the DNA testing. Along with the application, the eligible inmate shall submit an acknowledgment that is on a form prescribed by the attorney general for this purpose and that is signed by the inmate. * * *"