OPINION
{¶ 1} Defendant-appellant, Christopher Galloway, appeals from a judgment of the Franklin County Court of Common Pleas rejecting his application for DNA testing. For the following reasons, we affirm that judgment.
 {¶ 2} In 1984, appellant was convicted of two counts of rape, one count of aggravated burglary, one count of robbery, and one count of kidnapping. The trial court *Page 2 
sentenced appellant to an aggregate prison term of 30-50 years. This court affirmed appellant's convictions. State v. Galloway (Apr. 9, 1985), Franklin App. No. 84AP-890.
 {¶ 3} Testimony at appellant's trial indicated that four swabs were collected from appellant's victim (two from her vagina and two from her rectum) during a sexual assault examination at St. Anthony's Hospital. The swabs were turned into the Columbus Police Property Room. Slides were made from those swabs. The State retained half of these materials and provided the other half to appellant's counsel, who gave them to an entity named the National Paternity Laboratory ("NPL") for testing. The victim's clothes were also collected and submitted to the police property room. The swabs and slides were turned into the property room under slip number 135099 and the clothes were turned in under slip number 135100.
 {¶ 4} On May 19, 2004, appellant filed an application for DNA testing. He claimed that the slides and the swabs collected during the physical examination of the victim should be tested for DNA.
 {¶ 5} Plaintiff-appellee, the State of Ohio, responded to appellant's application and asserted that the evidence no longer existed. To support that assertion, the State submitted affidavits from Richard Termuhlen, II, and Kimberly Bond, both Assistant Prosecuting Attorneys for Franklin County, Ohio. These attorneys searched the Franklin County Prosecutor's Office property room for property connected to appellant's case.[1]
Both Termuhlen and Bond stated in their affidavits that they "personally inspected every piece of property not otherwise clearly labeled as belonging to a different specific criminal *Page 3 
prosecution" and that there was no property affiliated with appellant's case in the prosecutor's property room.
 {¶ 6} John DeFluiter, the Property Room Clerk for the Franklin County Prosecutor's Office, maintains the physical property and related records for cases prosecuted by the Franklin County Prosecutor's Office. DeFluiter submitted an affidavit stating that he conducted a search of the property room for evidence connected to appellant's case and found none. He later assisted Termuhlen and Bond in their search of the property room and again found no property affiliated with appellant's case.
 {¶ 7} The State submitted an affidavit from Jami St. Clair, the Crime Laboratory Manager of the Columbus Police Department Crime Laboratory. St. Clair stated that the police crime lab received laboratory requests from the Columbus Police Department regarding property number 135099 (the swabs and slides) on February 28, 1984. The requested scientific tests were completed the same day. On August 15, 1984, the materials were returned to the crime lab for further tests. Those tests were performed the next day. St. Clair stated that it is the crime lab's policy to return biological evidence to the police property room or to the prosecutor's office after tests are performed. St. Clair stated that she performed a physical search of the crime lab for any property connected to appellant's case and found none.
 {¶ 8} The State also submitted an affidavit from Kim Coblentz, the Senior Property Clerk for the Columbus Police Department. She stated that a full physical inventory of the department's property room is conducted at least every two years and that as of the last physical inventory completed in February 2005, there was no property in the room associated with property numbers 135100 or 135099 or with the names of *Page 4 
appellant or his victim. Coblentz also stated that no such property had been submitted to the property room since the last physical inventory.
 {¶ 9} Termuhlen submitted a second affidavit in which he stated that he spoke with Kevin Shively, the Assistant Director of Clinical Laboratories at the Ohio State University Hospitals. Termuhlen stated that University Hospital East is the successor-in-interest to the former St. Anthony's Hospital and occupies the same building. Termuhlen stated that Shively told him that there "are no biological specimens at University Hospital East that remain from its days as St. Anthony Hospital."
 {¶ 10} Although not in affidavit form, the State also asserted that it contacted Bob Gutendorf, an employee of NPL, who claimed that NPL was out of business. NPL was sold to another entity, which was then acquired by a third entity in 1999 or 2000. According to the State, Gutendorf stated that NPL's policy was to return evidence to the person requesting the tests and that any evidence not so returned would be destroyed. The State asked appellant's trial counsel, who had requested the testing, whether the materials were ever returned to her. She could not recall. Gutendorf also stated that records at NPL were kept for five years and then destroyed.
 {¶ 11} In its July 20, 2007 decision, the trial court rejected appellant's application for DNA testing because the physical evidence at issue no longer existed. Appellant appeals and assigns the following errors:
 ASSIGNMENT OF ERROR I:
 The trial court erred in dismissing Mr. Galloway's application for DNA testing because the State did not conduct a search for remaining biological material with the "reasonable diligence" required by R.C. 2953.75.
 ASSIGNMENT OF ERROR II: *Page 5 
 The trial court's summary denial of Christopher Galloway's application for DNA testing is contrary to law because the trial court did not comply with the requirements of R.C. 2953.73(D).
 {¶ 12} R.C. 2953.71 et. seq. governs post-conviction DNA testing for eligible inmates whose DNA evidence was not, or could not be tested in the original felony trial.[2] R.C. 2953.72. If an eligible inmate submits a DNA testing application, the trial court "shall require the prosecuting attorney to use reasonable diligence to determine whether biological material was collected from the crime scene or victim * * * and whether the parent sample of that biological material still exists at that point in time." R.C. 2953.75(A). Reasonable diligence means "a degree of diligence that is comparable to the diligence a reasonable person would employ in searching for information regarding an important matter in the person's own life." R.C. 2953.71(Q). If the court concludes that the requested biological evidence no longer exists, it may not accept the application. R.C. 2953.74(C)(1). See State v.Collier, Franklin App. No. 05AP-716, 2006-Ohio-2605, at ¶ 9.
 {¶ 13} A trial court's decision whether to accept or reject an application for DNA testing is reviewed under an abuse of discretion standard. State v. Buehler, 113 Ohio St.3d 114, 2007-Ohio-1246, at ¶ 31; State v. Elliott, Hamilton App. No. C-050606, 2006-Ohio-4508, at ¶ 10; State v. Taylor, Erie App. No. E-07-035, 2007-Ohio-7105, at ¶ 10; R.C. 2953.74(A) (court "has the discretion, on a case-by-case basis, to either accept or reject the application."). An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable.State v. Adams (1980), 62 Ohio St.2d 151, 157. *Page 6 
 {¶ 14} We first address appellant's second assignment of error, in which he contends that the trial court's judgment entry rejecting his application failed to comply with R.C. 2953.73(D). R.C. 2953.73(D) requires the trial court to "enter a judgment and order that either accepts or rejects the application and that includes within the judgment and order the reasons for the acceptance or rejection as applied to the criteria and procedures set forth in sections 2953.71 to 2953.81 * * *." R.C. 2953.73(D) does not require that a trial court make factual findings or conclusions of law. State v. Price, 165 Ohio App.3d 198,2006-Ohio-180, at ¶ 13. The statute only requires that the trial court provide the reasons for its decision.
 {¶ 15} Here, the entirety of the trial court's judgment entry reads: "The Defendant's Application for DNA Testing is DENIED. The property for this case no longer exists." Appellant claims that this judgment entry does not set forth a sufficient reason for rejecting his application. We disagree.
 {¶ 16} Although the trial court could have stated the factual basis for its conclusion that the property at issue no longer exists, R.C.2953.73(D) only requires the trial court to state its reasons for its acceptance or rejection of the application. The trial court's statement that the "property for this case no longer exists" is sufficient to satisfy the statutory requirement. While a more complete explanation might be preferable, the statute does not require it.
 {¶ 17} Appellant's reliance on Price, State v. Ayers, Cuyahoga App. No. 86006, 2005-Ohio-6972, and State v. Smith, Cuyahoga App. No. 87937,2007-Ohio-2369, in support of this assignment of error is misplaced. These cases hold that R.C. *Page 7 2953.74(C)(4) requires a trial court to analyze the purported defense theories before deciding that the results of a DNA test would not be outcome determinative. Ayers at ¶ 7-8; Smith at ¶ 8; Price at ¶ 12. Here, the trial court did not reject appellant's application because the result of a DNA test would not have been outcome determinative; it rejected the application because the property no longer existed, and therefore, could not be tested. Thus, these cases do not support appellant's assignment of error.
 {¶ 18} Appellant's second assignment of error is overruled.
 {¶ 19} Appellant contends in his first assignment of error that the trial court erred in rejecting his application for DNA testing. Specifically, appellant claims that the State did not use reasonable diligence to determine whether the parent sample of the biological material collected from the victim still exists. We disagree.
 {¶ 20} The parties do not dispute that biological material was collected from the victim. They disagree whether the State used reasonable diligence in searching for that material. To determine whether the parent sample of biological material still exists, R.C.2953.75(A) requires the prosecuting attorney to investigate all relevant sources including, but not limited to: (1) all prosecuting authorities from the original case, (2) all law enforcement authorities involved in the original investigation, (3) all custodial authorities involved at any time with the biological material, (4) the custodian of all agencies, (5) all crime laboratories involved at any time with the biological material, and (6) all other reasonable resources. Ultimately, what constitutes reasonable diligence will depend on the facts and circumstances of each particular case. State v. Carter, Franklin App. No. 07AP-323, 2007-Ohio-6858, at ¶ 11. *Page 8 
 {¶ 21} In Collier, supra, this court addressed the State's obligation to search for biological material with reasonable diligence. There, an assistant prosecuting attorney for the Franklin County Prosecutor's Office ("APA") submitted an affidavit describing the State's search for biological material. The affidavit stated that there was biological evidence collected from the victim. The APA talked with an individual from the Columbus Police Crime Lab and was told that the lab did not have the capacity to retain biological materials after they are tested and that the lab's policy was to return such materials to the prosecutor. The APA further stated that she contacted someone with the Columbus Police Department's Property Room and was informed that the police do not retain biological evidence after a case is set for trial. Such evidence is returned to the prosecutor's office. Finally, the APA contacted an employee with the Franklin County Prosecutor's Property Room and was told that the property room contains no evidence from the case. Collier, at ¶ 4.
 {¶ 22} We determined in Collier that the APA's affidavit did not demonstrate reasonable diligence because it was largely based on assumptions. Id. at ¶ 10; see, also, State v. Ustaszewski, Lucas App. No. L-05-1226, 2006-Ohio-329, at ¶ 23 (insufficient evidence to show reasonable diligence where affidavit based on speculation and guesses). We noted that the APA's affidavit did not affirmatively state that the crime lab or the police property room did not have the material. Nor did the APA conduct a search of the crime lab or police property room. Instead, the APA simply assumed that the responsible authorities complied with the applicable policies. Additionally, the APA did not provide sufficient information to exclude local hospitals as possible sources of the biological material. Collier, at ¶ 15. In light of these deficiencies, we determined that the *Page 9 
State did not use reasonable diligence in searching for biological material. However, we also noted that the State was not required to prove that the evidence was actually destroyed to support its contention that the evidence no longer existed. Id. at ¶ 16.
 {¶ 23} There are notable differences between the facts inCollier and the facts presented here. In Collier, the court was concerned with the state's failure to actually search the crime laboratory and the police property room when the state was in a position to do so. The state had access to both locations and could have easily conducted a search. Here, the affidavits submitted by Termuhlen and Bond reveal that they actively searched the Franklin County Prosecutor's Office Property Room and found no material from appellant's case. The other affidavits provided by the State also indicate that the State searched the Columbus Police Department's Crime Lab and Property Room and found no material relating to appellant's case. Although appellant claims that there is no indication in St. Clair's affidavit that she searched the crime lab for evidence associated with both property room slip numbers, her affidavit states that she searched the lab "for any property connected" to appellant's case and found none.
 {¶ 24} Appellant also complains that the prosecuting attorney did not conduct a physical search of NPL, the laboratory that tested the biological material at defense counsel's request prior to the original trial. Even if we assume the prosecution had a duty to search the lab to which defendant sent the sample, the state nonetheless complied with the statute. The State points out that NPL is no longer in business and that a physical search of NPL was not possible. Although a successor entity to NPL may still exist, the prosecuting attorney has no right to conduct a search of a private entity. Nor does R.C. 2953.75 grant to the prosecuting attorney the power to require such a physical *Page 10 
search. In the absence of statutory authority, reasonable diligence does not require the prosecuting attorney to conduct a physical search of a private entity.
 {¶ 25} The question presented here is whether the trial court abused its discretion in finding that the biological material no longer existed when the prosecuting attorney relied upon a former NPL employee who stated that any evidence not returned to appellant's trial counsel would have been destroyed. We find that the trial court did not abuse its discretion under these circumstances.
 {¶ 26} The prosecuting attorney represented that Bob Gutendorf was knowledgeable about how NPL handled this type of biological material 20 years ago. We note that R.C. 2953.75(A) expressly permits the prosecuting attorney to rely upon information from a crime laboratory involved at any time with the biological material in question. Because NPL no longer exists, it was reasonable for the prosecuting attorney to rely upon a former employee in determining whether any biological material might still exist. Therefore, the trial court did not abuse its discretion in rejecting appellant's application based in part on information obtained from a former employee of the now nonexistent NPL.
 {¶ 27} The prosecuting attorney could also rely on representations of the assistant director of clinical laboratories at the Ohio State University Hospital that the hospital had no biological materials from the former St. Anthony's Hospital. Again, it is reasonable to conclude that the assistant director of clinical laboratories would know if the hospital retained any biological materials from the former St. Anthony's Hospital.
 {¶ 28} Nor do we find that the trial court abused its discretion when it found the biological material no longer existed based on the prosecuting attorney's communications *Page 11 
with appellant's trial counsel. As previously noted, the prosecuting attorney represented to the court that appellant's trial counsel could not recall whether NPL returned any biological material to her. Given that it is the appellant, not the prosecuting attorney, who has the authority to direct the disposition of his own case files and related evidence, the trial court did not abuse its discretion in finding that the prosecuting attorney exercised reasonable diligence by contacting appellant's trial counsel regarding this issue.
 {¶ 29} Lastly, appellant takes issue with the fact that the information presented by the prosecuting attorney to the court regarding NPL and appellant's trial counsel was not presented by affidavit. Although presenting such information by affidavit is preferable, a trial court does not necessarily abuse its discretion by relying on information presented by other means.
 {¶ 30} R.C. 2953.75(B) requires the prosecuting attorney to prepare and file with the court a report that reflects what efforts the prosecuting attorney undertook to determine if any biological material still exists. The statute does not require the prosecuting attorney to submit this information by affidavit. In interpreting statutes, we must give effect to the words used, and not insert or delete words.Perrysburg v. Twp. v. Rossford, 103 Ohio St.3d 79, 2004-Ohio-4362, at ¶ 7; State v. Teamer (1998), 82 Ohio St.3d 490, 491. A prosecuting attorney, as an officer of the court with a specific duty under R.C.2953.75(B), has an ethical obligation to accurately report to the court what efforts he or she undertook to determine the existence of any biological material from a case. Because the statute does not require the prosecuting attorney to support his or her report with affidavits, the absence of an affidavit, by itself, does not require us to find that the trial court abused its discretion by rejecting appellant's application. *Page 12 
 {¶ 31} Although Collier involved a deficient affidavit, the court did not hold that an affidavit was required. Rather, Collier found that the State did not demonstrate reasonable diligence because the prosecuting attorney's representations were needlessly based on assumptions Here, the affidavits and other information presented by the State demonstrate that it acted with reasonable diligence in its attempts to locate any material related to appellant's case. Where possible, the State conducted a physical search and did not rely on assumptions. Where the state lacked the authority to conduct a physical search, it reasonably relied on representations of those who were knowledgeable about the status of biological material. Therefore, the trial court did not abuse its discretion when it rejected appellant's application based upon a finding that the evidence no longer exists.
 {¶ 32} Lastly, appellant contends that the State should have investigated the court reporter or Clerk of Courts office, and the Bureau of Criminal Identification and Investigation ("BCI") to determine whether those entities had any biological materials. We disagree. This court's records indicate that the exhibits from appellant's trial were returned to the prosecutor's office after we resolved appellant's direct appeal. They were not returned to the court reporter or Clerk of Court's office. There is also no indication the BCI, which apparently was created after appellant's trial, ever possessed biological material from appellant's trial. Under these circumstances, the failure of the State to make these inquiries does not constitute a failure to act with reasonable diligence.
 {¶ 33} The State has shown that it acted with reasonable diligence in attempting to find the biological material at issue here. Therefore, the trial court did not abuse its *Page 13 
discretion when it rejected appellant's application based on a finding that the material no longer exists. Appellant's first assignment of error is overruled.
 {¶ 34} Appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and TYACK, JJ., concur.
[1] Although Bond's affidavit refers to another case, both sides agree that she searched for evidence concerning appellant's case.
[2] These statutory provisions went into effect on October 29, 2003. *Page 1